Sandra Jamerson PARKER *v.* BANCORPSOUTH BANK

06-1171                                                    253 S.W.3d 918

Supreme Court of Arkansas
Opinion delivered March 22, 2007

*Robert L. Depper, Jr.*, for appellant.

*Burbank Dodson & Barker, PLLC*, by: *Gary R. Burbank*, for appellee.

PAUL DANIELSON, Justice. Appellant Sandra Jamerson Parker appeals from the circuit court's judgment in favor of appellee BancorpSouth Bank (hereinafter BancorpSouth or "the bank"), finding that the Arkansas Statutory Foreclosure Act was not unconstitutional. Her sole point on appeal is that the circuit court erred when it ruled that the Act did not violate either the Arkansas or United States Constitution. We affirm the circuit court.

The record reveals that on August 13, 2004, BancorpSouth filed a complaint against Ms. Parker. In it, BancorpSouth stated Ms. Parker had borrowed the sum of $33,200 from the bank for the purpose of financing the purchase of a residence located at 201 South Smith Street in El Dorado. The bank stated that Ms. Parker executed a promissory note evidencing her indebtedness and executed a mortgage for securing repayment of the indebtedness. BancorpSouth asserted that after Ms. Parker defaulted on her monthly installments, it issued a mortgagee's notice of default and intention to sell and scheduled a foreclosure sale. In compliance with the Arkansas Statutory Foreclosure Act (codified at Ark. Code Ann. §§ 18-50-101 – 18-50-117 (Repl. 2003)), Bancorp-South claims it caused notice of the scheduled foreclosure sale to be served on Ms. Parker and published such notice. It noted that the sale took place, that the bank itself was the successful bidder, and that a deed was issued conveying title to the bank. It further alleged that while it became fee-simple owner of the property and delivered to Ms. Parker a written demand for possession, Ms. Parker refused to vacate the premises. Accordingly, the bank's complaint sought an immediate writ of possession against Ms. Parker and sought a declaration of its right to possession.

Ms. Parker filed a counterclaim to the complaint on September 7, 2004, in which she asserted that the Arkansas Statutory Foreclosure Act was unconstitutional in that it violated procedural due process under both the federal and state constitutions. Specifically, Ms. Parker claimed:

> There is no information given to the debtor to advise the debtor as to what they can do or how they can protect their rights in the judicial process, nor does the statute inform the debtor that they can go into court and contest the right of foreclosure as well as the amount of the debt being sought by the creditor.

Based on her claim that the Act was unconstitutional, Ms. Parker urged the circuit court to set aside the sale of her home and hold the sale, and subsequent deed issued to the bank, void as unconstitutional. Ms. Parker also filed an answer to the complaint, generally denying that the bank was entitled to a judgment granting an immediate writ of possession or a judgment declaring the bank's right to possession as paramount to her right.

On February 2, 2006, the bank and Ms. Parker filed a stipulation of the parties. The stipulation provided, in pertinent part:

> 13. In accordance with the Arkansas Statutory Foreclosure Act the Mortgagee's Notice of Default and Intention to Sell was published in the Arkansas Democrat newspaper, and on the internet and was posted on the bulletin board at the Union County Courthouse as indicated in an affidavit of mailing prepared by Bancorp-South's attorney, a copy of which is attached hereto, marked as Exhibit "E" and incorporated herein as if set out word for word. Further, the same notice of default was mailed to Sandra Parker at 201 South Smith, El Dorado, AR 71730 by regular First Class Mail and was simultaneously mailed to her by Certified Mail, Return Receipt Requested. A copy of the Certified Mail form is attached hereto as Exhibit "F." The Certified Mail was returned "Unclaimed." The notice of default mailed by regular First Class Mail was not returned to the bank.

> 14. Sandra Parker contends that she never received any mailing containing the Mortgagee's Notice of Default and Intention to Sell. BancorpSouth has no direct proof that Sandra Parker received the First Class Mail or the Certified Mail containing the Notice of Default and Intention to Sell.

The stipulation concluded that the only issue in dispute to be decided by the circuit court was as follows:

> 1. Is BancorpSouth entitled to possession of the subject realty because it holds a mortgagee's deed from a statutory foreclosure sale or is the deed invalid because the process by which the deed was obtained violated the Constitutions of the State of Arkansas and the United States?

The parties then filed trial briefs with the circuit court, specifically addressing the constitutionality of the Arkansas Statutory Foreclosure Act.

On May 16, 2006, a letter opinion was filed by the circuit court, in which the circuit court found:

> The Court has carefully reviewed the stipulation of fact[s], the briefs of the parties and the applicable law and is of the opinion the statute is not unconstitutional. As stated by Judge Wilson in Hernandez v. Fleet Mortgage Company, there is no state action involved. Hence, the due process clause is not invoked. This is a private proceeding between a debtor and a creditor. The mere fact that state law outlines the consequences from private contract provisions does not mean that any part of the foreclosure is a manifestation of state action.
>
> Further, the Court finds the notice to have been sufficient. It is incumbent upon the debtor to make inquiry about his or her rights especially when notified of a default, which could lead to the loss of their property. By signing the note and mortgage, the defendant obligated herself to be governed by the provisions of the Act.

The circuit court then awarded BancorpSouth possession of the real estate and ordered Ms. Parker to immediately deliver possession of the property to BancorpSouth. The circuit court then memorialized its decision in the judgment filed June 16, 2006, and Ms. Parker filed her notice of appeal on July 13, 2006.

Ms. Parker argues that the procedure set forth in the Arkansas Statutory Foreclosure Act violates procedural due process because the notice requirement fails to give an individual notice of what to do in the event he or she wishes to contest the propriety of a foreclosure. She claims that the Act makes no provisions for stopping the sale in the event that there are defenses to the default

and, for that reason, there is a taking of property without due process. While she concedes that the bank is not a state agency, she submits that a state action, necessary for a violation of due process, occurred when the General Assembly passed the Act, as it is that state action which gave the bank the right to foreclose using, what she claims is, constitutionally defective notice. She further claims that Article 2, Section 22 of the Arkansas Constitution is even stronger than the Fourteenth Amendment to the U.S. Constitution and that the Act violates our state constitution because it does not even contemplate that a declaration of default might be erroneous. Finally, Ms. Parker avers that the issue of taking another's property via a foreclosure process has always been in the purview of the judiciary, and, for this reason, the Act circumvents separation of powers.

BancorpSouth responds that foreclosures under non-judicial foreclosure provisions are not deemed to constitute state action and, thus, constitutional restrictions on governmental actions do not apply. It maintains that mortgagors voluntarily enter into a private contract and that they should be obligated to diligently inquire and apprise themselves of their legal obligations under the contracts they sign. It further contends that the Act's notice provisions are reasonably calculated to adequately apprise a mortgagor that a serious default has occurred and to prompt any reasonable person to make a diligent inquiry, which is all that due process would require. The bank urges that proceedings under the Act are not court proceedings and should not be judged by the same standards under our constitutions or statutes.

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the findings of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Archer-Daniels-Midland Co. v. Beadles Enters., Inc.*, 367 Ark. 1, 238 S.W.3d 79 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *See id.* Disputed facts and determinations of credibility are within the province of the factfinder. *See id.*

At issue in the instant case is the constitutionality of the Arkansas Statutory Foreclosure Act, which is codified at Ark. Code Ann. §§ 18-50-101 – 18-50-117 (Repl. 2003). Specifically challenged is Ark. Code Ann. § 18-50-104 (Repl. 2003), which sets forth the required contents of a mortgagee's or a trustee's

notice of default and intention to sell and the requirements for delivery of such a notice. Subsection (a) establishes the contents of the notice and provides:

> (a) The mortgagee's or trustee's notice of default and intention to sell shall set forth:
>
> (1) The names of the parties to the mortgage or deed of trust;
>
> (2) A legal description of the trust property and, if applicable, the street address of the property;
>
> (3) The book and page numbers where the mortgage or deed of trust is recorded or the recorder's document number;
>
> (4) The default for which foreclosure is made;
>
> (5) The mortgagee's or trustee's intention to sell the trust property to satisfy the obligation, including in conspicuous type a warning as follows: "YOU MAY LOSE YOUR PROPERTY IF YOU DO NOT TAKE IMMEDIATE ACTION"; and
>
> (6) The time, date, and place of sale.

Ark. Code Ann. § 18-50-104(a). Subsection (b) of the statute establishes the requirements for the delivery of such a notice:

> (b) The mortgagee's or trustee's notice of default and intention to sell shall be mailed within thirty (30) days of the recording of the notice by certified mail, postage prepaid and by first class mail, postage prepaid, to the address last known to the mortgagee or the trustee or beneficiary of the following persons:
>
> (1) The mortgagor or grantor of the deed of trust;
>
> (2) Any successor in interest to the mortgagor or grantor whose interest appears of record or whose interest the mortgagee or the trustee or beneficiary has actual notice;
>
> (3) Any person having a lien or interest subsequent to the interest of the mortgagee or trustee when that lien or interest appears of record or when the mortgagee, the trustee, or the beneficiary has actual notice of the lien or interest; and

(4) Any person requesting notice, as provided in § 18-50-113.

Ark. Code Ann. § 18-50-104(b). Here, Ms. Parker asserts that the statute violates procedural due process under both the federal and state constitutions. We disagree.

A review of a challenge to the constitutionality of a statute begins with the principle that statutes are always presumed to be constitutional and the burden of proving otherwise is upon the party challenging the statute. See *Night Clubs, Inc. v. Fort Smith Planning Comm'n*, 336 Ark. 130, 984 S.W.2d 418 (1999). We must construe a statute as constitutional if it is possible to do so. See *id.*

This court has held that due-process rights are either procedural or substantive. See *Arkansas Dep't of Correction v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). Procedural due process guarantees that a state proceeding which results in deprivation of property is fair, while substantive due process guarantees that such state action is not arbitrary and capricious. See *id.* Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. See *Tsann Kuen Enters. Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003). In that regard, the concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. See *id.* Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. See *id.*

### Federal Due Process

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. See *Mathews v. Eldridge*, 424 U.S. 319 (1976). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer great loss. See *Tsann Kuen Enters. Co. v. Campbell, supra.* It depends upon whether the interest in avoiding that loss outweighs the governmental interest in summary adjudication. See *id.* Thus, determining what process is due involves the consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *See id.*

In examining the first factor, it is clear that Ms. Parker has a private interest in her real property. Of particular interest here is whether or not there is any "official action," or what we have previously referred to as "state action," involved. We hold that there is not.

The United States Supreme Court has observed that private use of state-sanctioned private remedies or procedures does not rise to the level of state action. *See Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478 (1988). That being said, the Court has also observed that when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found. *See id.* Based upon this, we have observed that there is a significant distinction between cases involving actions taken by or with the overt assistance of state officials and those that do not involve any action or assistance by state officials:

> The former class of cases may include, among others, procedures for attachment or execution of a judgment as those procedures necessarily require state action by a judge or sheriff or both. For example, in an attachment case, a creditor must first obtain a writ of attachment from a court and then have that writ executed by a sheriff. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). The latter class of cases may include cases such as the instant one where no action by a state official was taken inasmuch as Martin Machinery asserted its possessory lien pursuant to statute, but used no assistance from any state official in so doing. *See, e.g., Flagg Bros.*, 436 U.S. 149. . . .

*Leonards v. E.A. Martin Mach. Co.*, 321 Ark. 239, 244, 900 S.W.2d 546, 549-50 (1995).

Here, Ms. Parker asserts that the required state action occurred when the General Assembly passed the Act. We disagree. It was the bank who was the actor in this foreclosure action, the bank that followed the procedures, and the bank that initially loaned Ms. Parker the money to purchase her home. No state actor was involved, nor was any assistance of a state official required.

Indeed, we have held that the regulation of business is left to the state, and even highly regulated types of business are not sufficient to give rise to a due-process claim. *See Johnson v.*

*Encompass Ins. Co.*, 355 Ark. 1, 130 S.W.3d 553 (2003) (discussing notice statutes that regulated the procedures insurance companies were required to follow to cancel or not renew policies). Moreover, the General Assembly, in the emergency clause to the chapter, stated that the "Act would provide an efficient and fair procedure for the liquidation of defaulted mortgage loans to the benefit of both the homeowner and the mortgage lender." Act 53 of 1987, § 19. Most importantly though, as the Georgia Supreme Court has observed:

> There is insufficient meaningful government involvement to constitute state action by the mere adoption of statutes providing for the sale of real estate under powers contained in mortgages, debts, deeds or other lien contracts where the grant of such power is contained in the contract between the parties thereto. No government official or agency is involved in such process.

*Coffey Enters. Realty & Dev. Co., Inc. v. Holmes*, 233 Ga. 937, 938, 213 S.E.2d 882, 884 (1975).[1]

---

[1] In the instant case, Ms. Parker's note contained the following provision:

> Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

> Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Ms. Parker's security agreement provided:

> Subject to any limitations in the "REAL ESTATE SECURITY" paragraph above, if I am in default on this loan or any agreement securing this loan, you may:

> (a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due;

> (b) Use the right of set-off as explained below;

> (c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;

> (d) Make a claim for any and all insurance benefits or refunds that may be available on my default;

> (e) Use any remedy you have under state or federal law; and

█ While the statute here was promulgated by the General Assembly, it simply regulates the procedure for providing notice during a private foreclosure action and does so to protect Arkansas's citizens and lenders. The enactment of the procedure does not constitute state action, nor does the procedure require any state action. Accordingly, we hold, applying a federal due-process analysis to this case, that no state action occurred and, thus, the deprivation of Ms. Parker's property interest is not protected by the Fourteenth Amendment.[2]

## State Due Process

We turn then to Ms. Parker's argument regarding state due process. When engaging in state due-process analysis, this court has used a balancing test of competing interests somewhat similar to the federal test enunciated in *Mathews v. Eldridge, supra. See Leonards v. E.A. Martin Mach. Co., supra*. Consistent therewith, for purposes of determining whether one has been deprived of property in violation of the Arkansas Constitution's due-process provision, we have adopted the analysis of state action as was enunciated in the federal context by *Lugar v. Edmondson Oil Co., Inc,* 457 U.S. 922 (1982). *See Leonards v. E.A. Martin Mach. Co., supra.* Two requirements, therefore, must be met before we will find state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 246, 900 S.W.2d at 551 (quoting *Lugar,* 457 U.S. at 937).

---

(f) Use any remedy given to you in any agreement securing this loan.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

[2] The United States District Court for the Eastern District of Arkansas similarly held in *Hernandez v. Fleet Mortgage Corp.,* No. 4:01-CV-00442-WRW (E.D. Ark. Feb. 24, 2003).

In the instant case, the second requirement of this test has not been met. There is clearly no involvement by a state official, no aid from state officials, nor any conduct otherwise chargeable to the state, during the foreclosure process. Accordingly, there can be no state due-process violation.

### Separation of Powers

As stated above, Ms. Parker further argues that the statutory foreclosure provisions violate separation of powers. While Ms. Parker raised this argument to the circuit court in her trial brief, she did not obtain a ruling on it. We have held that the failure to obtain a ruling on an issue from the circuit court, including a constitutional issue, precludes review on appeal. *See Cincinnati Ins. Co. v. Johnson*, 367 Ark. 468, 241 S.W.3d 264 (2006). Accordingly, we are precluded from addressing the merits of Ms. Parker's separation-of-powers argument.

For the foregoing reasons, we affirm the circuit court.

Affirmed.