Cite as 2020 Ark. 34

# SUPREME COURT OF ARKANSAS
No. CV-19-293

| | |
|---|---|
| | **Opinion Delivered:** January 23, 2020 |
| CITY OF LITTLE ROCK | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION [NO. 60CV-14-1864] |
| V. | |
| LADONNA NELSON, AS PARENT AND NEXT FRIEND OF RICKY NELSON, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| APPELLEE | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

This is the first of two decisions from this court arising out of LaDonna Nelson's challenge to the Little Rock District Court's assessment of installment fees. *See City of Little Rock v. Nelson*, 2020 Ark. 19, 592 S.W.3d 666.[1] In this appeal, the City of Little Rock argues that the jury erroneously concluded that the district court's installment fee practice violated due process. But even if a violation occurred, the City claims it should not be held liable for the district court judge's actions. We reject the City's arguments and affirm.

I.

This case arises from the Little Rock District Court–Second Division's illegal assessment of installment fees. Under Arkansas law, defendants who pay a district court fine

---

[1]The companion case addresses Nelson's award of attorney's fees and costs.

on an installment basis will be assessed a fee of ten dollars per month. *See* Ark. Code Ann. § 16-13-704(b)(3)(E) (Supp. 2013). The fee, which is to be assessed monthly and accrues for each month that a defendant has not made payment in full, must be collected in full in each month that a defendant makes an installment payment. *See* Ark. Code Ann. § 16-13-704(b)(1). Rather than charge the defendant by month, Little Rock District Court Judge Vic Fleming assessed an aggregate fee for the entirety of the time-pay plan at the outset. As a result, the defendant would pay installment fees for the full plan even if the fine or civil penalty was paid off early.

This practice is best illustrated by the facts leading up to the underlying suit. On April 21, 2014, LaDonna Nelson's then-minor son, Ricky, pleaded no-contest to speeding before Judge Fleming. Ricky was given a $115 civil penalty and placed on a three-month installment plan. Judge Fleming issued a time-pay order indicating that Ricky was required to pay $145. The additional thirty dollars reflected the cumulative fee for the installment plan. Days later, Nelson sought to pay her son's civil penalty in full. The district court cashier would not accept her check for $115. Nelson was required to pay the entire fee for the installment plan even though the plan was not used. She paid the full sum of $145 eleven days after the civil penalty was issued.

On May 12, 2014, Nelson filed the underlying class action against the City of Little Rock. As amended, the complaint alleged that the Little Rock District Court's installment fee practice constituted an illegal exaction and violated due process under the Arkansas Civil Rights Act. The illegal exaction claim was dismissed. The circuit court later ruled from the

2

bench that it would grant summary judgment for the City on the due process claim. The City was instructed to prepare a precedent order but unexplainably failed to do so.

Before the August 2018 trial, the City requested a ruling on the parties' cross-motions for summary judgment. No reference was made to the previous bench ruling. The circuit court denied the motions. After a two-day trial, the jury returned a verdict in favor of Nelson. It concluded that the installment fee practice violated due process and that the City was liable for the violation. The circuit court ordered the City to pay back $8,670 in excess installment fees paid by class members. The court later awarded Nelson with $225,000 in attorney's fees and a $10,000 enhancement fee. The City subsequently sought our review.

## II.

As a threshold matter, we must first assure ourselves of jurisdiction. Nelson argues that the City failed to file a timely notice of appeal. Absent a timely and effective notice of appeal, we lack jurisdiction over the matter. *See Worsham v. Day*, 2017 Ark. 192, at 3–4, 519 S.W.3d 699, 701. If Nelson is correct, we must dismiss this appeal. *Id*.

On August 29, 2018, the circuit court entered a judgment reflecting the jury's verdict and ordering the City to repay the excess installment fees. Though this was not a final order, the City filed a notice of appeal. After resolving the issue of damages, a final order was entered on December 27, 2018. The premature notice of appeal was treated as filed on the day after the final order was entered. *See* Ark. R. App. P.–Civ. 4 (2018). Accordingly, the record was due and filed on March 28, 2019. *See* Ark. R. App. P.–Civ. 5 (2018). Our jurisdiction was secured by the initial notice of appeal. We need not consider Nelson's argument premised on the City's amended notice of appeal and post-trial motion.

3

## III.

On appeal, the City asserts that the installment fee orders did not violate due process. The City also claims that it cannot be held liable for Judge Fleming's actions. This argument primarily rests on the premise that Judge Fleming is not a city employee. But if we conclude otherwise, the City insists it is shielded from liability by judicial immunity and the doctrine of *respondeat superior*.

The City presents these questions by appealing the circuit court's denial of its motions for summary judgment, directed verdict, and judgment notwithstanding the verdict (JNOV). As discussed below, we decline to consider the denial of the City's motion for summary judgment. Moreover, only the arguments raised in support of the City's motion for directed verdict at the conclusion of all evidence are preserved for review. *See* Ark. R. Civ. P. 50(e) (2018). Our review is accordingly limited to those preserved by that motion. *See Carr v. Nance*, 2010 Ark. 497, at 22, 370 S.W.3d 826, 839.

When reviewing a denial of a motion for directed verdict, we determine whether the jury's verdict is supported by substantial evidence. *See Wal-Mart Stores, Inc. v. P.O. Market, Inc.*, 347 Ark. 651, 664–65, 66 S.W.3d 620, 628–29 (2002). Substantial evidence is that of sufficient force and character to compel a conclusion one way or another with reasonable certainty. *Id*. We review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id*. In conducting our review, we do not try issues of fact. *Id*. Rather, we simply examine the record to determine if there is substantial evidence to support the jury's verdict. *Id*. However, questions of law will be reviewed de novo. *Id*.

A.

Generally, the denial of summary judgment is not reviewable on appeal. *See Ball v. Foehner*, 326 Ark. 409, 412, 931 S.W.2d 142, 144 (1996). This is true even after a trial on the merits. *Id.* Though the City recognizes this rule, it nevertheless urges our review. It argues an exception is warranted because the circuit court denied the motion on the day of trial. As a result, there was no opportunity to pursue an interlocutory appeal. And thus, the City claims it would be "unduly prejudicial" if we declined to consider the denial now.

We disagree. Even if the motion had been denied earlier in the litigation, there would have been no basis for review. A denial of summary judgment is reviewable only when it results in a denial of sovereign immunity or the immunity of a government official. *See* Ark. R. App. P.–Civ. 2(a)(10). The City's motion did not raise an issue of immunity that would allow review under this rule. Though we have recognized narrow circumstances where review would be proper outside of Rule 2(a)(10), those exceptions are inapplicable here. *See Cannady v. St. Vincent Infirmary Medical Center*, 2018 Ark. 35, at 11–12, 537 S.W.3d 259, 265–66 (outlining exceptions).

The City's assertion of undue prejudice is particularly troubling for a separate reason. Over a year and a half before trial, the circuit court orally granted summary judgment in favor of the City with respect to the due process claims. The court asked the City to prepare a precedent order. The City inexplicably never followed through. On the day of trial, the City sought a ruling on the motion but made no mention of the prior bench ruling. The court denied the motion and the jury subsequently found in favor of Nelson on the due process claims. As a result, the City must pay nearly $250,000 in damages, fees, and costs.

We recognize that mistakes happen. The record suggests that multiple City attorneys handled this case since its inception in 2014. Indeed, the attorney who received the bench ruling was not the same attorney who handled the case at trial. But this costly mistake is magnified by the fact that Little Rock taxpayers must pay for it. The responsibility of safeguarding the public's trust and funds must not be taken lightly. We urge the City Attorney's Office to ensure that such needless errors are not repeated.

B.

On to the heart of this case: the jury's verdict finding that the installment fee orders violated due process and holding the City liable for the violation.

1.

The City first argues that the installment fee practice did not violate due process and thus it was entitled to a directed verdict. Our preservation requirement bars all but one of the City's arguments in support of this point. We may only consider the City's contention that Nelson was provided adequate process because she could have appealed to the circuit court or asked Judge Fleming for a refund of the installment fee. Given those avenues for relief, which Nelson did not pursue, the City claims there was no due process violation.

The City's assertion that due process was not triggered based on the *de minimis* interest in the installment fee and the "small" risk of erroneous deprivation was not raised below and is thus unpreserved on appeal. *See Found. Telecomm., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 237, 16 S.W.3d 531, 535 (2000). The City's claim that this suit constitutes an impermissible collateral attack is likewise unpreserved. The City only raised this claim in its motion for summary judgment and motion for JNOV. As discussed above, the motion for

summary judgment is unreviewable. Moreover, a motion for JNOV cannot assert a ground not included in the motion for directed verdict. *See Carr*, 2010 Ark. 497, at 22, 370 S.W.3d at 839. Only the arguments made in the motion for directed verdict may be brought on appeal. *Id.*

The City's argument sounds in procedural due process. Procedural due process guarantees that a state proceeding resulting in deprivation of property is fair. *See Parker v. BancorpSouth Bank*, 369 Ark. 300, 307, 253 S.W.3d 918, 923 (2007). At minimum, due process requires notice and a reasonable opportunity to be heard. *Id.* The City contends these requirements were satisfied by the availability of a de novo appeal to the circuit court and the opportunity to seek a refund with Judge Fleming.

The first of these theories is unpersuasive. It is true that Nelson could have filed a de novo appeal to the circuit court. *See* Ark. R. Crim. P. 36 (2014). But as she points out, a de novo appeal is not a mechanism to recover an illegally charged fee. Rather, an appeal under Rule 36 simply guarantees a de novo trial in the circuit court as if no judgment had been rendered in the district court. *Id.* To be sure, the installment fee would have been vacated upon filing the appeal. But so too would the $115 civil penalty. Judge Fleming testified that Ricky's $115 civil penalty was the bare minimum allowed under state law and city ordinance. *See* Ark. Code Ann. § 16-10-305 (Supp. 2013) (statutory costs). Moreover, the civil penalty was issued upon dismissal of the charge in lieu of conviction. *See* Ark. Code Ann. § 16-90-115(b) (Supp. 2013). An appeal would have placed Ricky at risk of a harsher sentence solely to avoid the imposition of an unlawfully assessed installment fee. We are not

7

convinced that a Rule 36 appeal provides an adequate procedure for the return of the illegal fee.

The City also argues that Nelson could have asked Judge Fleming for a refund or reconsideration of the fee. Judge Fleming testified he would have changed the order to reflect that the civil penalty was paid in full. This would have mooted the installment fee. Yet, there was no evidence showing that Nelson was advised of this option. Instead, Nelson was simply told by the court cashier that she had to pay the entire sum of $145. Even if this procedure was generally adequate, due process is satisfied only if the plaintiff was given proper notice of the procedure. The lack of notice, as established by the evidence at trial, precludes satisfaction of due process. The circuit court's denial of directed verdict on the due process claim is affirmed.

2.

The City next argues that it cannot be held liable for the due process violation because Judge Fleming is not a city employee. To support its claim that Judge Fleming is not a city employee, the City relies on Amendment 80 to the Arkansas Constitution and statutes regarding the establishment of district courts.

Amendment 80, effective in 2001, provides that "judicial power is vested in the Judicial Department of state government." Ark. Const. amend. 80, § 1. The amendment also grants this court with "general superintending control over all courts of the state[.]" *Id*. § 4. District courts were established as trial courts of limited jurisdiction. *Id*. § 7(A).

Amendment 80 gives the General Assembly "power to establish jurisdiction of all courts . . . and the power to establish judicial circuits and districts and the number of judges

8

for Circuit Courts and District Courts." *Id.* § 10. The legislature exercised that power in 2003 by providing that the City of Little Rock would have a district court consisting of three divisions with elected judges. *See* Ark. Code Ann. § 16-17-921(2) (Repl. 2010). The judges, however, were not state employees. Indeed, the City was responsible for funding the district court salaries and operational expenses. *See* Ark. Code Ann. § 16-17-119 (Repl. 2010).

In 2007, the General Assembly established a state district court program creating a limited number of state-funded district court judgeships. *See* Ark. Code Ann. § 16-17-1101(8) (Repl. 2010). Except for the state district court judgeships created by the program, "a judge serving in another . . . local district court position shall continue to be an employee of the cities or counties, or both, that he or she serves and shall be paid according to state law." Ark. Code Ann. § 16-17-1107 (Repl. 2010). The City concedes that the Little Rock District Court was not part of the state district court program at the time of the events alleged in Nelson's complaint. *See* Ark. Code Ann. § 16-17-1101. It was not until January 1, 2017, that the Little Rock District Court was reorganized as a state district court. *See* Ark. Code Ann. § 16-17-1110 (Supp. 2011). Prior to the Little Rock District Court's reorganization, Judge Fleming was a city employee under section 16-17-1107. The City nevertheless objects.

Because the district court was part of the judicial department under Amendment 80 and established by the General Assembly, the City maintains that Judge Fleming's actions may not be imputed to it. It also cites to its lack of control and authority over the district court. Though this is a matter of first impression for this court, this issue was recently

9

addressed by the Eighth Circuit Court of Appeals. *See Evans v. City of Helena-West Helena, Ark.*, 912 F.3d 1145 (8th Cir. 2019); *Justice Network Inc. v. Craighead County*, 931 F.3d 753 (8th Cir. 2019). The Eighth Circuit was asked to consider similar arguments under Amendment 80 and the district court statutes. *See Evans*, 912 F.3d at 1146–47. The court determined that the employment status of a district court judge turns on whether, at the time of the alleged wrongdoing, the district court had been reorganized as a state district court. *See Justice Network*, 931 F.3d at 765. If it had not yet been reorganized as a state district court, the judge was an employee of the city or county they served. *Id*. Upon reorganization as a state district court, however, the judge became a State employee. *Id*.

Based on our reading of the constitutional and statutory provisions above, we agree with the Eighth Circuit. Because the Little Rock District Court had not yet been reorganized as a state district court at the times relevant to this case, Judge Fleming was an employee of the City. The due process violation arising from his installment fee policy may therefore be imputed to the City.

3.

Even if the due process violation may be attributed to the City, it contends that it is shielded from liability by judicial immunity and the theory of *respondeat superior*. Once again, much of the City's argument is barred by our preservation requirement. We may only consider the City's argument that it is shielded from liability because it had no input in the implementation of the installment fee policy.

The City's assertion of judicial immunity was first raised in its motion for JNOV. This was too late. *See Carr*, 2010 Ark. 497, at 22, 370 S.W.3d at 839. Only the arguments

10

made in the directed verdict motion are preserved for appellate review. *Id.* We therefore cannot consider any argument regarding judicial immunity. The City's contention that it was not required to raise judicial immunity until after it was deemed liable for Judge Fleming's actions is incorrect. Moreover, that claim is belied by the City's reliance on the doctrine of *respondeat superior* at earlier stages in the proceeding.

The City contends it cannot be liable for Judge Fleming's actions under a theory of *respondeat superior* implicating separation of powers. But this argument was not raised in the motion for directed verdict and is unpreserved for review. *See id.* The City's argument that the installment fee order was a judicial decision rather than municipal policy or custom was not raised in the motion for directed verdict at the close of evidence. It is likewise unpreserved. *Id.*; Ark. R. Civ. P. 50(e) (2018).

The doctrine of *respondeat superior* is not a basis for liability under the Arkansas Civil Rights Act. *See Jones v. Huckabee*, 369 Ark. 42, 49, 250 S.W.3d 241, 246 (2007). A plaintiff cannot base their claims against a municipality solely on the conduct of the municipal employees. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability will attach, however, when the unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Liability may also attach for constitutional deprivations resulting from less formal government actions that constitute a widespread practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 690–91 (internal citation omitted).

11

The City claims it cannot be held liable because it had no input in the policy's implementation or interpretation. Judge Fleming, however, testified that he consulted with deputy city attorneys, a senior probation officer, and the district court administrator prior to implementing the policy. He also showed the form to the Little Rock City Attorney. The City simply cannot say that the installment fee policy was not developed in conjunction with other city officials. Moreover, the policy was automatically applied to all district court defendants on an installment plan. And thus, we conclude that the installment fee policy constituted a governmental policy or custom to which municipal liability may attach.

As a final point, we decline to consider the City's cursory argument regarding the circuit court's refusal to provide two jury instructions. Arguments unsupported by convincing argument or authority will generally not be considered on appeal. *See Webb v. Bouton*, 350 Ark. 254, 260, 85 S.W.3d 885, 888 (2002). We also decline to consider the City's "abuse of power" argument under Article 12, Section 3 of the Arkansas Constitution. That argument has no bearing on our resolution of the due process and municipal liability questions presented by this appeal.

Affirmed.

KEMP, C.J., and BAKER, J., concur without opinion.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. While the majority concludes that the Little Rock District Court had a practice of assessing installment fees that violated due process, Nelson's lawsuit (as filed) nonetheless amounts to an impermissible collateral attack. The majority is simply mistaken in concluding that the collateral-attack

12

issue is not properly before us. Indeed, this issue colors the assessment of the entire lawsuit and aids in understanding how this issue should have been handled. Furthermore, the law is clear that liability for Judge Fleming's judicial decision-making in matters before him does not impute to the City of Little Rock, regardless of whether he is a city employee.

## I. *Preservation of Collateral-Attack Issue*

The majority's conclusion that the collateral-attack issue is not preserved is simply incorrect and disregards our own rules of appellate procedure. Whether a given lawsuit constitutes an impermissible collateral attack is a legal question for a judge, not a factual question for a jury. The City of Little Rock argued that Nelson's lawsuit was an impermissible collateral attack in its motion for summary judgment below, which was denied by the circuit court. Thereafter, the circuit court did hold a jury trial on the underlying merits of the lawsuit, after which the City filed its notice of appeal. However, the pretrial denial of the City's summary judgment motion was all that was necessary to preserve the collateral-attack issue for appeal. "An appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." Ark. R. App. P. –Civ. 2(b). *Stacks v. Marks*, 354 Ark. 594, 598, 127 S.W.3d 483, 485 (2003) ("It is true that an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment."). Even if this issue had not been "preserved" in the traditional sense, the collateral-attack question in this particular case directly implicates the circuit court's authority to award relief and therefore its subject-matter jurisdiction, which remains at issue regardless of the juncture. In short, the collateral-attack issue is squarely before this court.

13

II. *Collateral Attack*

Nelson's claim for damages is brought pursuant to the Arkansas Civil Rights Act (ACRA). In construing the ACRA, our courts look to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and now codified at 42 U.S.C. § 1983. Ark. Code Ann. § 16-123-105(c). In *Heck v. Humphrey*, the Supreme Court of the United States held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486–87 (1994) (emphasis added). In short, if a plaintiff wishes to pursue a claim for damages based on an unlawful penalty contained in a judgment or court order, then a necessary component of the plaintiff's claim is showing that the judgment or court order has been legally invalidated; otherwise, the claim amounts to an impermissible collateral attack. This requirement has not been satisfied in this case, nor was there any allegation in Nelson's complaint that it had been.

The majority concludes that there is no evidence indicating that Judge Fleming notified Nelson that he would moot the installment fee if she paid the penalty in full and that the lack of notice precludes satisfaction of due process. But that is part of the problem

here: there is no transcript maintained in Arkansas district court proceedings. We cannot know what was communicated between Judge Fleming and Nelson and what was not. Instead, all we have is the district court's order, which Nelson signed and which provides as follows:

Nelson, Ricky . . . MUST PAY $145 on or before July 31, 2014

The Amount Due is due in full now, but because payment in full now would cause you a hardship, the Court orders you to pay by the Due Date. You are encouraged to make monthly payments. Under A.C.A. 16-13-704, an installment fee is assessed and added to your fine, penalty, or fee. The Court authorizes this arrangement instead of putting you in jail for non-payment. The Due Date is a deadline: You must pay in full on or before the Due Date OR appear in court on or before the Due Date to explain why you cannot pay. If you appear in court on or before the Due Date, You will not receive an extension but may be ordered to perform community service in lieu of payment. If for any reason you default – that is, you neither pay on or before the Due Date nor appear in court on or before the Due Date to explain why you cannot pay, a warrant for your arrest will be issued and your driver's license will be suspended.

From the language contained in the order, Nelson knew she could come back to court should paying the penalty become an issue. To the extent Nelson felt that the district court's assessment of the penalty contravened the dictates of Ark. Code Ann. § 16-13-704, there was a remedy in place for her to pursue that issue: "A person convicted of a criminal offense in a district court, *including a person convicted upon a plea of guilty*, may appeal the judgment of conviction to the circuit court for the judicial district in which the conviction occurred." Ark. R. Crim. P. 36(a) (emphasis and underline added). Rule 36 confers a right to a *de novo* appeal in circuit court, as if no judgment (or penalty) had been rendered in the district court. Ark. R. Crim. P. 36(g). Instead of paying the penalty and fee contemplated

15

in the district court's order, Nelson could have appealed to circuit court, where a transcript of the proceedings *would be* recorded and maintained.

But that's not what happened. Nelson did not come back to Judge Fleming or appeal his decision to circuit court. Instead, with the district judge's order in place, Nelson obtained counsel and filed a class-action civil rights lawsuit against the City of Little Rock (all before the time to appeal her traffic case had expired), based specifically on the same due-process and statutory-interpretation issues she could have raised by appealing her traffic case to circuit court. The result of that lawsuit is a near quarter-million-dollar judgment against the City of Little Rock. The *vast* majority of this judgment ($225,000) consists of attorney's fees. Only a tiny fraction of the judgment (an $8,670 recovery for the class and a $10,000 enhancement for Nelson) consists of money that will be awarded to class members. The entire proceeding before the circuit court occurred without the original district court judgment being lawfully invalidated, as required by law and as it would have been had the contemplated judicial process been followed. This is a collateral attack on a judgment entered by a duly constituted court and an elected judge, which is presumed valid until it is properly modified or overruled. In short, there are other ways this issue could have been addressed (and that would have satisfied the requirement that the judgment be legally invalidated) that would not have required Little Rock taxpayers to foot such a large bill.

### III. *Municipal Liability*

I also disagree with the majority's holding that liability for Judge Fleming's decisions in traffic cases should attach to the City of Little Rock as a municipal entity. The parties and the majority make a great deal of fuss about whether Judge Fleming is an "employee"

16

of the City of Little Rock (as is often the operative question for employer liability in typical civil tort cases, i.e., the "*respondeat superior*" analysis), but that is not the question in this civil rights case.

Again, for purposes of construing the ACRA, we look to how the federal courts have construed 42 U.S.C. § 1983. Ark. Code Ann. § 16-123-105(c). The Supreme Court of the United States has concluded that, in this context, an employer-employee relationship alone is insufficient. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Instead, a claim brought against a municipality under § 1983 is sustainable only if a constitutional violation has been committed pursuant to an official custom, policy, or practice of the municipality. *Monell*. As observed by the Eighth Circuit in *Granda v. City of St. Louis*:

> Although a single act of a city official "whose acts or edicts may fairly be said to represent official policy" may give rise to municipal liability under § 1983, *Monell*, 436 U.S. at 694, 98 S. Ct. 2018, a municipality will only be liable under § 1983, where a city official "responsible for establishing <u>final policy</u> with respect to the subject matter in question" makes a deliberate choice among competing alternatives that results in the violation of constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

472 F.3d 565, 568 (2007) (underline added).

The majority relies on two Eighth Circuit cases (*Justice Network Inc. v. Craighead County*, 931 F.3d 753 (8th Cir. 2019), and *Evans v. City of Helena-West Helena*, 912 F.3d 1145 (2019)) for the proposition that because "Judge Fleming was an employee of the City . . . [t]he due process violation arising from his installment fee policy may therefore be imputed to the City." (Maj. Op. at 10). But neither of those cases stand for that proposition.

17

Both *Justice Network* and *Evans* hold that acts by employees of an Arkansas district court that has been "reorganized" (since the passage of Amendment 80 to the Arkansas Constitution and the implementation of the state district-court program discussed in the majority opinion) as a "*state* district court" cannot subject the municipality in which that district court sits to liability since those employees are working for the state, not the municipality. In *Justice Network*, the district court had been reorganized as a state district court, so the acts of its employees could not subject the municipality to liability; therefore, the Eighth Circuit affirmed the lower court's dismissal of the lawsuit against the municipality. In *Evans*, the district court had not yet been reorganized as a state district court; therefore, the Eighth Circuit reversed the lower court's decision to dismiss the lawsuit on that basis.

But the mere fact that an individual is a municipal employee as opposed to a state employee does not automatically subject the municipality to liability for that individual's acts—again, for the municipality to be liable, the plaintiff still must show that the constitutional violation was carried out pursuant to a municipal policy or custom, or by an employee with final policy-making authority. The Eighth Circuit's opinion in *Evans*, where the plaintiff was suing a municipality for acts by the clerk who worked at the area district court, makes this clear:

> The [trial court] resolved the case on a motion to dismiss, so the *record has not been developed* with respect to the *clerk's duties and responsibilities*, the *source of the clerk's pay*, or the *degree of control* that state or local officials, respectively, exercised over the clerk. At this stage of the proceeding, however, we conclude that the complaint states at least a plausible claim that the clerk was a city official at the time of the alleged wrongdoing, in which case the City could be accountable for actions of the clerk that establish or carry out an unconstitutional policy or custom of the municipality. We therefore conclude that the case should not have been dismissed for failure to state a claim on the

18

grounds specified by the [trial court]. *We express no view on whether the complaint otherwise is sufficient to state a claim against the City.*

912 F.3d at 1147 (emphasis added).

In fact, in *Granda*, the Eighth Circuit squarely rejected the argument for municipal liability advanced in this case (that a municipality can be liable for alleged constitutional violations by a district court judge in performing his or her judicial decision-making duties), and the basis for that rejection harkens directly back to Nelson's decision to sue instead of appeal:

> Granda asserts that a city can also be held liable for the decision of a municipal judge, relying on *Williams v. Butler*, 863 F.2d 1398. That case involved the administrative decision of a municipal judge to terminate his law clerks, <u>rather than a judicial decision that is subject to review or reversal by higher state courts</u>. *Id.* at 1398; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988) ("the authority to make municipal policy is necessarily the authority to make *final* policy") (emphasis in original).

*Granda*, 472 F.3d at 569 (underline added). Alleged constitutional violations by a district court judge in his judicial decision-making duties do not impute liability upon the municipality where the district court sits. Notably, neither *Justice Network* nor *Evans* overruled or even alluded to *Granda*—obviously because those cases dealt with a different question. In rendering his order, Judge Fleming was interpreting a state statute applicable to the case before him, and that decision was subject to review by higher state courts. Judge Fleming was performing his duties as a district court judge prescribed by law. Pursuant to *Granda*, Judge Fleming's performance of those duties is not an exercise of final policy-making authority for the City of Little Rock. Therefore, liability does not impute.

In short, this case should be reversed, and the judgment against the City of Little Rock should be vacated. The fact that we are instead affirming, without addressing the

19

City's dispositive arguments or on–point cases cited in support, leaves me more than troubled.

I dissent.

*Caleb Garcia* and *Rick D. Hogan*, Office of the City Attorney, for appellant.

*Holleman & Associates, P.A.*, by: *John Holleman* and *Timothy A. Steadman*, for appellee.